You may proceed. Thank you. May it please the Court, my name is Rodney States, a law student, on behalf of the Appellant Benjamin Puentes. I'm here with fellow law student Harry Aaron, and we're under the supervision of Dr. Jordan Curtis of the University of Arizona College of Law. I ask that I be able to argue the first four minutes on the issues regarding equitable tolling, that Mr. Aaron argue four minutes on the underlying claims, and hopefully we can retain two minutes for rebuttal. This case is about accrual and equitable tolling in order to prevent unjust technical spoil of valid claims. Mr. Maybe you could pull that mic and just sort of point it towards your mouth. Is this better? Yeah, this is terrible acoustics in this room. It was built in the pre-microphone era. Anyway, just try to keep your mouth close to the microphone. Yes, Your Honor. Okay. Mr. Puentes' claims accrued on February 22, 2011, 20 days before he filed his claims in the Federal District Court on March 14 of that same year. Why didn't he know of his claim as early as April of 2005 when the testimony occurred? Your Honor, upon our review of the record, the testimony occurred on April 9 of 2009, in which Sergeant Powers spoke of the improper source of information that was put into the second search warrant. That was in the midst of the third trial. I thought it was the second trial where he admitted that he had obtained information with regard to where the gentleman lived by looking at his personnel file and then confirmed it by doing the license record. Do I have that wrong factually? Factually, from our review of the record, that occurred on April 9 of 2009 when Sergeant Powers made that statement. That was during the third trial. So he didn't say anything during the second trial in 2005 to the effect that he had gotten this information by looking at his personnel records? That's your position? Yes, Your Honor. Okay. Additionally, his civil rights claims that he brings now could have been used to collaterally attack the underlying criminal conviction. And under Heck v. Humphrey, a cruel date would be delayed so that a criminal defendant cannot collaterally attack. Do you have a Heck v. Humphrey argument? Yes, Your Honor. Where? In our reply brief. In your reply brief? In the reply brief. Arguments in the reply brief don't count for purposes of preserving issues on appeal. You have to have it in your opening brief. Is the argument in your opening brief? We can look right now. The answer is you don't know. I believe it is in the opening brief, Your Honor. The Heck v. Humphrey, I believe we cited it in the opening brief. And do you have a belief as to the page where it is? Yes, Your Honor. We'll find that. I don't. Let's see. Do we have the page number? I mean, you mentioned Heck on the bottom of page 25. Is that what you're relying on? Yeah. I believe that was in the vindictive prosecution section. Do you have a brief in front of you? Do you have a brief in front of you? You can't possibly answer a question about a brief without actually looking at it. We did bring a copy of it. You don't have a copy of your own brief? You came to court without a copy of your own brief? Is that what it is? Your Honor, I was under the understanding that we brought a copy of the opening brief. I apologize if we did not. You came to court without your own brief? Apparently so, Your Honor. Well, that's unusual. Okay. Go ahead. We do have it. You didn't read your brief last night before you came to court? Yes, Your Honor. We read through our briefs. However, I was not able to memorize each particular section. Well, you must have had it if you read it. You must have had a copy of the brief. Well, I have an electronic copy on my laptop, Your Honor. That's where I was reading it from last night. That's what happens when you read stuff electronically. On page 25 of the appellant's opening brief. You mentioned heck there. Is that preserving the argument? I've finally gotten to the point where I can ask you a question about it. Does that raise the tolling argument? Yes, it raises the delayed accrual argument, Your Honor. I'm sorry? It raises the delayed accrual argument, Your Honor, for a plaintiff who is also a criminal defendant. Delayed accrual, right. Yes. You're arguing that there's equitable tolling on all of the causes of action that Mr. Puentes is pursuing or only some of them? Your Honor, if you find these accrual dates to be unpersuasive, we also argue that equitable tolling would preserve the conspiracy, the unlawful search and seizure claims. What's the ground on which you claim equitable tolling and for exactly what periods of time? The grounds upon which we're relying for equitable tolling are from the cases of Jones v. Blanas. No, I don't want case names. Okay. What are the facts that would give your client the opportunity for equitable tolling? The facts would be, Your Honor, that out of the same set of facts and the same actions of the named defendants arose multiple avenues of remedy, and that Mr. Puentes diligently pursued two of the available avenues. Meanwhile, his federal claims would be tolled under the doctrine of equitable tolling. Would you agree that if we take 2005 as the kickoff date, the date when he knew or should have known that he had these causes of action, there really is no theory of equitable tolling that would be enough to eat up the 6 years between 2005 and 2011? We have to get to 2009 in order for the equitable tolling argument to have any traction. Isn't that correct? No, Your Honor. In fact, because Mr. Puentes was diligently pursuing the available avenues of remedy from 2003, when the criminal charges as well as the employment proceedings were first launched against him, and he diligently pursued those through exhaustion, respectively the employment proceedings in 2009 and the criminal proceedings in February of 2011, that that entire period would afford him equitable tolling of his federal claims. I also see that I am well over the time that I had planned. With the permission of the Court, I would be happy to answer any other questions or turn the time over to my fellow student, Mr. Aaron. Go ahead. Thank you, Your Honors, for this opportunity. My name is Harry Aaron, a law student. Mr. Puentes has a plausible and cognizable claims against the named defendants for their violations of his due process rights. We ask the Court to reverse their demand for two reasons. First, there was a conspiracy to deny Mr. Puentes a fair termination appeal process. Second, the vindictive prosecution claim. I first wish to address the conspiracy charge, and I see I only have a minute, so I just want to make these points quickly clear. Under Loudermill, Mr. Puentes is guaranteed a fair termination proceeding that's fair from being tainted, that's free from being tainted. Here, Mr. Puentes was denied that right. Under Loudermill, we look to Skelly, we look to State law, and here the basis is Skelly. Well, what's in the complaint? I mean, let's say we get there. What have you got in the complaint that suggests that he didn't get a fair proceeding? If you open to page 8 in the complaint, if we open to tab 10, actually tab 9, my mistake, Your Honor, and we go to page 84, I believe. I'm sorry for this, Your Honor. Why are you sorry? I'm wasting my time. He says, Mr. Puentes You waste more time by saying you're sorry. Just tell us what you want to say. Mr. Puentes, in count 2, makes it clear that he was denied fair process. You pointed me to a page. Oh, 79. The next thing I expect from you is a line. 79, Your Honor. Page 79. I thought you said 84. 79. Okay. That's fine. Paragraph 64, line 70. Mr. Puentes makes it clear that he was denied his due process rights to a fair procedural employment. On page 79. Oh, I'm sorry, Your Honor. It's page 80. I'm sorry? It's page 80. We're looking at the amended complaint. Is that right? Sorry, Your Honor. Amended complaint? First amended complaint, tab 10, page 80, paragraph 64, line 70. Okay. It's found elsewhere as well. Do you have it in front of you? Yes, Your Honor. Okay. So what page have you settled on? ER 80. ER 80. Line number? 7. Okay. All right. So what's there? In there, Mr. Puentes claims that his 14th Amendment due process right, which is mandated, has been violated. And this is a procedural claim. Well, but that's not enough, saying my due process rights have been violated. What does he say in terms of facts, saying, you know, yeah, it's alleged facts. I came to the hearing, and there were kangaroos sitting there to judge it. Some, you know, some, you know, I was not allowed to bring witnesses. So, you know, I didn't have enough notice. I had the hearing with two hours' notice. So, you know, you've got to come up with facts. Just saying it's been a due process violation is not enough. Your Honor. What do you have in the complaint that would lead us to believe that if we, if you were able to prove what's alleged in the complaint, there is a due process violation? Your Honor, Mr. Puentes makes it clear that the violation. Do you understand the question? Yes, Your Honor. I do. Okay. Just answer the question. Don't beat around the bush. The Fourth Amendment. What is it? What facts do you allege that suggests there's something wrong with the hearing? His lack of knowledge of the Fourth Amendment violations did not give him the ability to see all evidence levied against him, and that tainted the procedure. I'm sorry. So you're relying on his lack of knowledge as a due process violation? The lack of knowledge that Mr. Tarshis and Sergeant Powers would not grant him because they continued to hide the ball against him. I'm sorry. The what? They continued to hide the fact that they illegally searched his file and then used this illegal search as the basis of a falsified warrant, Your Honor. I'm sorry. And where is this in the complaint? This is on, as you... Page? This is... Line. Paragraph 64, the same paragraph, Your Honor. Okay. Where does it say that? The illegal search of my home by my supervisor was ordered by... So this is the illegal search regarding... And it's incorporating, Your Honor... We are talking about the... I thought we were talking about the hearing. Yes, Your Honor. Our contention is that because Mr. Puentes did not have the ability to see all evidence, this tainted the hearing against him because he was not... Where do you allege that in the complaint? Mr. Puentes is a pro se plaintiff, Your Honor, and he was unable to fully... I'm sorry. This is not in the complaint. No. This is you standing here in the Court of Appeals telling us that this is where the complaint is. This is based... No, Your Honor. You want us to reverse the district judge based on the fact that you're standing there telling us that's his theory.  Where can we say, look, this judge erred by not...by failing to read the complaint fairly and liberally? You want to ponder those questions? It will give you a little time for rebuttal. Maybe you can... Thank you, Your Honor. I think you have a note. Can I just insert one question, Judge? Of course. Two quick questions. One, didn't he know that he was injured in 2003? I mean, he stated that he knew that he couldn't have gotten his home address from his license material because his license would not give somebody access to that information. And second, didn't the California courts deal with this completely? Aren't you asking us to second-guess the California courts in a way that's clearly improper? Your Honor, first, to address your first question, there is... a peace officer's bill of rights. And under California Evidence Code 832.7, Mr. Puentes believed that they would go... if they were to access their file, his file, they would have to insert some process or they would have to... and there was no mention of that, so Mr. Puentes believed that everything they had done was kosher. And by stating that, he knew upon 2003 would be inserting that Mr. Puentes hadn't... allowing Mr. Puentes and saying it is right that you had no faith in the system. And second, your second question. California. California. The issue of collateral estoppel, Your Honor, is that Mr. Puentes, if you look at the... this is about the process of the termination, not the actual underlying claims of the termination, Your Honor. Okay, thank you. Thank you. We'll hear from the appellee. Good morning, Your Honors. Deputy County Counsel Marcy Berkman for the defendants. How are you? Thank you. The first question the court asked of the Appellant's Counsel was regarding the accrual. And the court is correct that the first time that Sergeant Powers testified on the stand that he obtained the information, the address from the personnel file, was indeed during the second trial in April 2005. Why wasn't he brought by Heck v. Humphrey from being in suit, you know? If he had brought the suit earlier, he would have said that. He still got criminal charges. And certainly the search, certainly some of the claims were Heck barred until he had a full acquittal or reversal dismissal, right? During the district court argument and an appellant's opening three briefs, appellants argued that Heck v. Humphrey bars the vindictive prosecution claim. The county and the county defendants have never contested that. As the court pointed out in our replacement brief, we brought to the court's attention that appellant had never made a Heck v. Humphrey argument with regard to the Fourth Amendment search and seizure claims, and thus had never preserved that argument for appeal, and that even if they had made that argument, that with respect to the Fourth Amendment search and seizure claims, those claims would only be barred by Heck if it would have been, if the underlying case, the criminal case, would have been necessarily invalidated by a Heck v. Humphrey argument. However, in the First Amendment complaint and in the entire evidentiary record, there's no evidence that anything seized during the allegedly invalid searches was used in the criminal complaint. The only facts and the only arguments that plaintiff ever makes is that a deed printout, which can be obtained from the public records, and in fact was, was used in the termination packet, and photographs that the supervisor took of the house were used in the termination packet. There's no allegations anywhere that anything during the allegedly invalid seizures was used in the criminal complaint, and therefore, even if appellants had properly preserved their Heck v. Humphrey argument and made that argument before the reply brief. Go ahead. Because there's a factual issue here, which is pretty pivotal as far as I'm concerned. I asked the appellant whether Sergeant Powers admitted in 2005 that he had obtained this information from the personnel file. They said no. He never admitted that until 2009. You say wrong. You're just reading the record wrong, appellants. In 2005, he did admit on the stand at the second, not the third trial, that he had made use of the personnel file, and the appellant knew that in 2005, six years prior to the filing of the lawsuit. Is that your position? That's correct. In fact, he admitted it both at the second trial and the third trial. The second trial, the date of the transcript is at page 56 of the original excerpts of record, and the testimony itself is at page 58 of the original excerpts of record. I believe those page numbers are to the hard copy. The page numbers from the electronic copy that appellants filed are slightly different. Thank you. You know, when you evaluate a question of what is tied up in a criminal, there were several trials here, right, two or three trials? Three criminal trials. I'm still trying to think about the seizure. I mean, let's say, for example, he had brought a case after the first trial. How would you know whether or not in the second trial evidence from the search might be presented? Until the case is over, until the criminal prosecution is over, why wouldn't the defendants have a good heck versus Humphrey dismissal claim saying, look, there's evidence, the criminal process is still ongoing, the evidence could be used in this still ongoing criminal prosecution, and therefore it's premature to bring the claim until the criminal charges have been dismissed. I mean, it just seems to me the fact that ultimately this evidence is not actually used in the criminal case shouldn't be dispositive. For heck versus Humphrey to delay the accrual date until after the appeal of all three criminal trials was ended would have required that under their allegations, the information from that would have necessarily invalidated the criminal case. But you don't know. Until the criminal process is over, you don't know what might invalidate the ultimate judgment, right? If there's evidence. I mean, let's say there's a confession and there's a dispute as to whether the confession was beaten out of him, you know, whatever. This is not this case. And he sues under 1983 for the coerced confession. Wouldn't the defense be, well, we might still use the, you know, the criminal case is still ongoing. We didn't use it in the first trial, but we might use it in the second trial or subsequent trial. Until the criminal proceedings are completed, doesn't heck bar any claim based on evidence that could be used in the criminal trial? Heck only, by the language of heck, tolls the case where the constitutional argument would necessarily invalidate the criminal argument. I think the policy position that Your Honor is espousing is that perhaps one might have, I don't think law that heck does this, but that maybe there's a case to be argued that no civil case should ever be brought until all criminal cases and the appeals are finished because only after that can people know exactly what happened at their criminal trials. That is a possible policy argument. That's not my understanding of heck. Isn't the argument you'd make if you were defending that lawsuit? I couldn't make it based on heck. I think if I were arguing for an extension of the law, I might try and argue that as a policy argument, if I wanted to argue what Your Honor is suggesting, that no constitutional 1983 cases can be brought while criminal appeals are pending. But I don't believe that that's the current state of the law under the heck. The heck decision holds that heck only tolls the approval of the case if the constitutional issue would necessarily invalidate the conviction. And in the current case, there's no arguments that any evidence was even used in the criminal trial at all. It all focuses on the termination proceedings. Right. And your position, if I understood it earlier, is that the only argument where they preserved the heck argument is the vindictive prosecution argument. There is no – they did not even offer the heck argument in connection with the wrongful termination or illegal seizure and so on. Do I have that right? That's correct. They first raised the heck issue by responding to our argument in their reply brief. Right. And the vindictive prosecution argument is a nonstarter under Imbler anyway, so you don't have to worry about heck in that case. That's correct. Okay. Okay. Anything further? Not unless the Court has any further questions. Okay. Thank you. Thank you. We'll give you a couple of minutes for a bottle if you wish to take it. Thank you, Your Honor, for your additional time. First, I want to point you out to the affidavit from Mr. Puentes' attorney on page 87. There is no mention – I'll allow you. I'm sorry. 87 of what? Page 87 of the appellant's supplemental record, Your Honor. There is no mention of a 2005 – I'm sorry. This supplemental record I have has a bunch of tabs. It is on – And it doesn't look to me like it's consecutively paginated, so you have to be specific. Is it consecutively paginated? I don't know. It is on tab 9. Tab 9. Okay. Or it is the two pages before tab 10. That makes it easier. So the last two pages of tab 9, Your Honor. Okay. And this is an affidavit? This is an affidavit from Mr. Puentes' attorney representing him at the trials, and there is no mention of a 2005 – of a 2000 – Mr. Sergeant Powers admitting on the stand in the second criminal trial. We have the transcript of Powers' testimony. This is – Your Honor, if you look at tab 10 and the transcript from Sergeant Powers' testimony, on the last page in tab 10, it says that it's from April 13, 2009 at 9 a.m. It does not say 2005, Your Honor. And we ask you to find that the – Mr. Puentes was put on notice in 2009 and not 2005 of the claims that Mr. Powers had illegally searched his file and that Sergeant Powers had illegally searched his file and this falsified warrant. We ask you to reverse and remand for further proceedings. Thank you very much, Your Honors, and thank you for this opportunity. Oh, and do you have any more questions? I'm sorry. Well, we have a question about Heck v. Humphrey, and opposing counsel has pointed out that the portion of the brief where Heck is mentioned is limited to the vindictive prosecution claim. So do you have a Heck v. Humphrey argument on appeal? Yes, Your Honor. If you look at the underlying public policy of why the Supreme Court initiated the rule of Heck, it's so that it's not used as a sword by a criminal defendant to collaterally attack using a Section 1983 case. And we ask you to rule that – we ask you to hold that. But have you raised it in your brief? Have you raised it on appeal? Under vindictive prosecution on page 25 of our opening brief. Right. That's where you raised it, but does it apply to any of the other claims? No, Your Honor. No? But you're dead on the vindictive prosecution count anyway, aren't you? How do you – well, never mind. We'll talk about that. Thank you, Your Honor. Thank you so much. All right. Okay. Thank you. Case decided.
judges: Ponsor, Kozinski, Graber